```
 1                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 2

 3      UNITED STATES OF AMERICA,

 4              Plaintiff,
         vs.                          Criminal No. 22-146
 5

        JAMES SMELKO,
 6

 7              Defendant.           - - -

 8

 9      Transcript of Videoconference Proceedings on June 22, 2022,
       in the United States District Court, Pittsburgh, Pennsylvania,
       before The Honorable Lisa Pupa Lenihan, Magistrate Judge.
10

11

        APPEARANCES:
12

13      For the Government:    Benjamin Risacher, Esquire
                               U.S. Attorney's Office
                               700 Grant Street, Suite 4000
14                             Pittsburgh, Pennsylvania 15219

15      For the Defendant:     Robert S. Carey, Jr., Esquire
                               429 Forbes Avenue
16                             Suite 450
                               Pittsburgh, PA 15219
17
        Court Reporter:        Sharon Siatkowski, RMR, CRR, CBC, CRI
18                             700 Grant Street, Ste. 5300
                               Pittsburgh, Pennsylvania 15219
19                             412.773.3623

20

21

22
       Proceedings recorded by mechanical stenography; transcript
23     produced by computer-aided transcription.

24

25
```

```
1                    P R O C E E D I N G S

2                         - - -

3           (1:50 p.m.; zoom videoconference proceedings:)

4           THE COURT:  Good afternoon.  I'm Judge Lenihan.  Court

5   is now in session in the matter of the United States of America

6   vs. James Smelko.

7           Mr. Smelko, do I have your permission to proceed with

8   this hearing via videoconference?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Thank you.

11          Let's see.  Robert Carey's representing the defendant.

12  Benjamin Risacher is representing the government.

13          Mr. Risacher, are you prepared to commence the hearing

14  regarding your detention motion?

15          MR. RISACHER:  Yes, Your Honor.  I would note that

16  Special Agent Lauren Scott of the FBI, who is familiar with the

17  organization did -- I'm sorry, with the investigation, is

18  present here today.

19          I'm going to proffer her testimony, Your Honor, and

20  then make her available for cross-examination from defense

21  counsel.

22          THE COURT:  Okay.

23          MR. RISACHER:  In this case, Your Honor, on May 7th of

24  2021, Mr. Smelko was present at 524 Franklin Street in East

25  Pittsburgh during the execution of a state search warrant.  The
```

1    warrant was issued based on a finding of probable cause that an

2    occupant or occupants of the residence possessed and/or

3    distributed child sexual abuse material.  More specifically, it

4    was believed that Smelko's roommate, Gilbert McCauley,

5    M-C-C-A-U-L-E-Y, who owns the home, possessed child sexual abuse

6    material.  As the warrant was being executed, it was determined

7    that Mr. Smelko lived and shared all common areas with

8    Mr. McCauley.

9           Electronic devices were previewed in accordance with

10    accepted practice and to ensure that devices not material to the

11    investigation were left at the residence.

12           Multiple images of suspected child sexual abuse

13    material were located on a device utilized by Mr. Smelko, a

14    green desktop computer that contained three hard drives,

15    detailed in the forfeiture account of the indictment that has

16    been returned against Mr. Smelko.  Many of the images appeared

17    to be morphed, that is, created, to depict child sexual abuse

18    material.

19           On the day of the search, Mr. Smelko agreed to speak

20    with agents and was interviewed by the FBI.  Mr. Smelko advised

21    that he met McCauley in prison and asked to live with McCauley

22    after he was released.  The two originally lived together in

23    Ohio but relocated to Pennsylvania because the sex offender

24    registration requirements were less stringent in Pennsylvania.

25           Mr. Smelko stated that he and McCauley never used each

1  other's computers or phones and that their Wi-Fi was password-
2  protected.

3          Further, during the interview, agents asked Mr. Smelko
4  about the morphed images they saw on the computer, and Smelko
5  stated that images on the computer were altered images where
6  parts of the images were cut and pasted.

7          Mr. Smelko's green desktop computer was seized and
8  examined.  Along with multiple indicia for Mr. Smelko,
9  investigators found over 100 images of morphed child sexual
10 abuse material.  These morphed images meet the definition of
11 child sexual abuse material under Title 18, United States Code,
12 Section 22568, Charlie.  Quote, such visual depiction has been
13 created, adapted, or modified to appear that an identifiable
14 minor is engaging in sexually explicit conduct, end quote.

15          In addition, we do have identifiable minors in the
16 morphed images, as required by the definition I've just quoted.
17 Many of the images are child celebrities.  Not only that, some
18 of the morphed images not only had the celebrity's name but also
19 lists their age.  And the identifiable ages in the photos range
20 from age 9 to 14.

21          With the age of the child listed on the image, the
22 government will have no difficulty proving a third element of
23 the offense, that the images involved prepubescent minors or
24 minors who have not attained 12 years of age.

25          Finally, with respect to the second element, the

```
 1    interstate element, this will be satisfied because the images
 2    were located on a computer.  And evidence will show that the
 3    images themselves were transported by means of interstate
 4    commerce, downloaded from the Internet, or that the computer and
 5    hard drives were manufactured outside the Commonwealth of
 6    Pennsylvania and traveled in interstate commerce.
 7              That's all, Your Honor.
 8              THE COURT:  Thank you, Mr. Risacher.
 9              Mr. Carey, would you like to cross-examine Agent
10    Scott?
11              MR. CAREY:  Yes.  Thank you, Judge.
12              THE COURT:  All right, Mr. Banas, if you would swear
13    Agent Scott in, please.
14              THE DEPUTY CLERK:  State and spell your full name for
15    the record, please.
16              THE WITNESS:  Yes.  Lauren Scott, L-A-U-R-E-N
17    S-C-O-T-T.
18              LAUREN SCOTT, a witness herein, having been first duly
19    sworn, was examined and testified as follows:
20              THE DEPUTY CLERK:  Thank you.
21              THE COURT:  Go ahead, Mr. Carey.
22              MR. CAREY:  Thank you, Judge.
23                          CROSS-EXAMINATION
24    BY MR. CAREY:
25         Q.   Hi, Agent Scott.  How are you today?
```

1    A.    Doing well.  How are you?

2    Q.    Good.

3          You heard the proffer.  I just have a couple of

4    background questions.  Did you author the affidavit of probable

5    cause and the search warrant?

6    A.    I did not.

7    Q.    Were you present when the residence of Franklin Street

8    was initially searched?

9    A.    I was not.

10   Q.    Do you know where the green desktop computer was

11   seized in the residence?

12   A.    According to the documentation, I do.

13   Q.    First, what documentation is that, if you are going to

14   refer to documents?

15   A.    Our documentation of the search warrant report.

16   Q.    Is there inventory?

17   A.    No.  It's a report that we write after we search a

18   location stating what happened.

19   Q.    Does that document tell you where the green computer

20   was located in the residence?

21   A.    Yes, it does.

22   Q.    Where would that be?

23   A.    It appears that the document -- that the electronics

24   that were seized were in the common areas.

25          THE COURT:  Mr. Banas, there may be some feedback from

 1    the jail room.  We may have to mute that.  Thank you.

 2              I'll ask you to say that again.

 3              THE WITNESS:  Sure.  Can you hear me now?

 4              THE COURT:  Yes.

 5              THE WITNESS:  It is noted that the electronics that

 6    were seized were in the common areas.

 7    BY MR. CAREY:

 8        Q.   And do you know how it was determined that these

 9    locations in the house were common areas?

10        A.   It seems that there was some communication with the

11    residents while at the search in which case the residents talked

12    to the agents involved and told them which ones were the common

13    areas.

14        Q.   Is that in the report you're referring to?  Are there

15    quotes from Mr. Smelko?

16        A.   Let me find it.

17        Q.   Would it be safe to say you do not have personal

18    knowledge about how it was determined what parts of this

19    residence were common areas?

20        A.   I was not at the residence.  But after discussing with

21    multiple agents there and reading all of the reports involved,

22    that is how I would -- I came to determine that I told you --

23    the determination that I told you.

24        Q.   Are you familiar with the affidavit of probable cause

25    for the search?

```
 1          A.    I am.

 2          Q.    And did this start with a tip from Google to NCMEC

 3   that the user had uploaded some child pornography?  Is that

 4   fair?

 5          A.    Yes.

 6          Q.    And the Google account belonged to someone named

 7   Gilbert McCauley; is that correct?

 8          A.    That is correct.

 9          Q.    And the telephone number assigned to that account was

10   Mr. McCauley's; is that right?

11          A.    Yes.

12          Q.    The email address that was associated with the Google

13   account belonged to Mr. McCauley, is that also correct?

14          A.    That is correct.

15          Q.    And then, was the -- the affiant, in fact, Detective

16   Klobchar; is that right?

17          A.    That is correct.

18          Q.    Did Detective Klobchar confirm that the Google account

19   was Mr. McCauley's?

20          A.    He did.

21          Q.    Did he confirm the telephone number was

22   Mr. McCauley's?

23          A.    As far as I'm aware of, yes.

24          Q.    And the IP address also was Mr. McCauley's IP address?

25          A.    The IP address comes back to a residence.
```

1      Q.    That would be 524 --

2      A.    Which is the residence -- correct.

3      Q.    I didn't mean to cut you off.

4            That's 524 Franklin Street; right?

5      A.    That is correct.

6      Q.    Did any law enforcement see Mr. Smelko operating the

7  green desktop computer?

8      A.    When we entered the residence, nobody was at a

9  desktop.

10     Q.    Was Mr. Smelko interviewed at all?

11     A.    Yes, he was.

12     Q.    Did he deny possessing child pornography?

13     A.    Mr. Smelko said that you would find pornography on the

14  device.

15     Q.    And he distinguished between adult pornography and

16  child pornography, didn't he?

17     A.    He did not discuss.  In the report that I am reading

18  here, he said -- that's exactly what Mr. Risacher said,

19  pornography images on the computer were altered images --

20           THE COURT:  Can you start -- I heard that's exactly

21  what Mr. Risacher said.  And what was the next sentence?

22           THE WITNESS:  Sure.  Pornography images on the

23  computer were altered images, were part of the cut and paste.

24  That is all that was stated.

25           THE COURT:  I'm not sure if it's your connection, but

 1    it's coming through in pieces.  Go ahead.

 2             THE WITNESS:  All right.  I'll speak slowly if it

 3    helps.

 4             MR. CAREY:  I have no further questions.

 5             THE COURT:  Redirect, Mr. Risacher?

 6             MR. RISACHER:  Very briefly, Your Honor.

 7                       REDIRECT EXAMINATION

 8    BY MR. RISACHER:

 9        Q.   Special Agent Scott, did the search warrant that was

10    executed that day authorize the search and seizure of all

11    electronic devices located within the residence?

12        A.   It did.

13        Q.   And has Mr. Smelko ever denied that he possessed or

14    that he owned the green desktop computer that was seized?

15        A.   He did not.

16             MR. RISACHER:  That's all I had, Your Honor.

17             THE COURT:  So, did both Mr. Smelko and Mr. McCauley

18    live at this residence?

19             THE WITNESS:  Yes, Your Honor.

20             THE COURT:  Okay.  Mr. Carey, anything else?

21             MR. CAREY:  Just argument.

22             THE COURT:  Mr. Risacher, any other testimony or

23    evidence from the government?

24             MR. RISACHER:  No, Your Honor.  Thank you.

25             THE COURT:  All right.  We'll move to the defendant,

1  then.  Mr. Carey, what do you have for us?

2         MR. CAREY:  Thank you, Judge.  Again, some brief

3  argument here for my client's release.

4         THE COURT:  You know, one of the things that -- I'm

5  sure you read the Pretrial Services Report.  There is some issue

6  regarding, which I don't have it here.  I forgot to bring it

7  out.  Mr. Banas, if you could bring me out the pretrial report,

8  I'd appreciate that.

9         Number one, I read it earlier, there's some issue

10  about where he's going to live and who owns it and McCauley owns

11  it and he's in jail.  So I don't know if you're going to address

12  that, but that would be helpful.

13         MR. CAREY:  I'll do my best.

14         THE COURT:  Okay.  So just argument.  And is this a

15  presumption case, Mr. Risacher?

16         MR. RISACHER:  No, Your Honor.

17         THE COURT:  Okay.  So the burden is then on the

18  government.  So I'll hear from the government first, please.

19         MR. RISACHER:  Yes, Your Honor.  I will address the

20  four major 3553 factors in going through this.

21         First, the nature and the circumstances of the

22  offense.  In particular, whether it is an offense which is

23  violent.  Here the nature of the offense, possession of morphed

24  material depicting the sexual exploitation of a minor, is

25  serious and violent.  The offense is, by definition, a violent

1   offense under Title 18, United States Code, Section 3156.  Not

2   only is it a violent offense, but it is violent offense aimed at

3   child victims who are the most vulnerable.

4          To underline just how serious the offense is,

5   Mr. Smelko appears to be facing a mandatory minimum sentence of

6   a decade in federal prison because of a previous hands-on

7   offense against a child in Ohio.  As such, this factor weighs in

8   favor of detention.

9          Second, the weight of the evidence against the person.

10  The weight of the evidence here is strong, Your Honor.  As

11  detailed in the proffered testimony, Mr. Smelko admitted the

12  device was his.  He admitted that he knew the device contained

13  pornography.  The device also has indicia for Mr. Smelko on it.

14  And the children are clearly identifiable, as many of the images

15  even list the child's name and age.  The evidence here clearly

16  establishes his guilt, and as such, this factor, just like the

17  first factor, again, weighs in favor of detention.

18         Third, the history and characteristics of the person.

19  With respect to his character, Mr. Smelko is a pedophile and a

20  felon who has sexually battered a child.  He was sentenced to a

21  combined 11 years in prison in Ohio and has been convicted of

22  nine felonies and two misdemeanors, all appear to be related to

23  the sexual abuse of children.  Specifically:  sexual battery,

24  felony; corruption of a minor, felony; another corruption of a

25  minor, felony; contributing to the delinquency of a minor,

misdemeanor two; illegal use of a minor in nudity oriented

material, felony; pandering obscenity involving a minor, felony;

furnishing alcohol to a minor, felony; pandering sexually

oriented material involving a minor, another felony; another

sexual battery, felony; another furnishing alcohol to a minor,

first-degree misdemeanor; and gross sexual imposition, a felony.

On top of all of that, he's a convicted liar with a tenth felony

conviction for complicity to perjury in Ohio.

So not only does he have ten felonies related to the

abuse of children and lying to the Court, he's required to

register as a sex offender for the rest of his life.  He lived

with another sex offender; they moved from Ohio to Pennsylvania

with his sex offender roommate because the sex offender laws in

Pennsylvania weren't as onerous for him.

In addition, Mr. Smelko has no family, no job, no ties

to Western Pennsylvania, and his sex offender roommate is now in

prison, also for possessing child pornography.  So Mr. Smelko

appears to have the house to himself.

Mr. Smelko has nobody and nothing to tie him to our

district other than his professed preference for our sex

offender laws because they apparently make it easier for him to

sit around all day, not working, looking at images of children

posing nude or engaging in sex acts.

Pretrial Services agrees that he should be detained

because no conditions or combinations of conditions can

1   reasonably assure his appearance.

2        Noting Mr. Smelko's current offense involving

3   prepubescent minors, his history of substance abuse, his mental

4   health problems, his lack of familial, residential, community,

5   employment, property, financial ties, lack of employment,

6   unstable or unsuitable living condition, and criminal history

7   involving hands-on felonies against children, again, this

8   factor, Your Honor, weighs in favor of detention.

9        Fourth and finally, the nature and seriousness of the

10   danger to any person or to the community that would be posed by

11   his release.  Again, possessing child pornography is, by

12   definition, a violent offense.  People who commit violent

13   offenses are a danger to the community.  But this particular

14   brand of danger is even more pernicious because it involves the

15   most vulnerable in our community:  children.

16        And we know that his danger and appetite is not

17   limited to viewing images.  Smelko was sentenced to more than a

18   decade in prison for nine felonies related to offenses against

19   children, including two felony sexual battery convictions.  He's

20   a convicted hands-on offender.  Smelko's history is one of a

21   person who views sexual images of children and sexually batters

22   children.

23        Pretrial Services again agrees, noting that no

24   condition or combination of conditions can reasonably assure the

25   safety of the community.

1          Noting, again, the nature of the charges here,

2    Mr. Smelko's substance abuse and mental health issues, his

3    history of sexually offending and abusing children, including

4    his criminal history, and his lifetime status as a sex offender.

5    This fourth and final factor, like the three before it, weighs

6    in favor of detention.

7          Your Honor, Mr. Smelko needs to be detained pending

8    trial.  The offense which he is charged with is violent and

9    serious.  The evidence is overwhelming.  He's a ten-time felon

10   who sexually battered children.  He appears to be facing a

11   mandatory minimum sentence of ten years in federal prison.  And

12   he needs to be detained until trial for the safety of the

13   children of the Western District of Pennsylvania, and to assure

14   his appearance, again, with the same conclusion reached by

15   Pretrial Services who also recommend detention.  Thank you.

16          THE COURT:  Thank you, Mr. Risacher.

17          Mr. Carey?

18          MR. CAREY:  Thank you, Judge.  It would be an

19   incomplete analysis to just say this is a serious offense, get

20   angry about it, and lock Mr. Smelko up.

21          When we look at the nature and circumstances of this

22   offense, the instant charge, it's possession only.  There's no

23   allegation of hands-on contact with children.  It's not a

24   distribution offense.

25          So the question is, are there conditions that can

1    ensure compliance that can prevent this?  Absolutely.  Just

2    don't let him have access to the Internet, it's just that

3    simple.

4              The weight of the evidence, a lot of the evidence,

5    points to Mr. McCauley.  We are getting glossed over the fact

6    that the search warrant was to search Mr. McCauley's house.  I'm

7    not clear about what the common areas are or what the basis for

8    making that determine nation is, based on the proffer and the

9    cross-examination.

10             But, overall, not so much evidence points to

11   Mr. Smelko.  And, again, the issue is are there conditions that

12   can ensure compliance and ensure safety and ensure that he'll

13   appear in court.  And, again, I would submit that limiting his

14   access to the Internet, that is something routinely done by

15   Pretrial Services office and would address the situation here.

16             He is a high school graduate.  He has some

17   conditions, physical and psychological, that make him vulnerable

18   to the COVID situation.  He's diabetic and has high cholesterol.

19   He suffers from bipolar disorder and anxiety.

20             But importantly, although his record is serious, it is

21   extremely stale.  The most recent conviction that I see on the

22   report goes back to the early 2000s.  We're talking about over

23   22 years until he's brought back into court.

24             And with respect to danger and seriousness to the

25   community or any person, again, this is an Internet crime.  It's

1  extremely unique.  And limiting, monitoring Mr. Smelko's use of

2  the Internet will be sufficient to ensure the safety of anybody

3  in the community.

4          So for those reasons, Your Honor, I do believe that

5  there are conditions and an appropriate order should be issued

6  from the Court releasing my client on bond.

7          THE COURT:  Thank you, Mr. Carey.

8          Officer Neal, can you pull up for me the form language

9  that your office uses for Internet access in these types of

10 cases?

11          PROBATION OFFICER:  Yes.  On the Zoom screen or send

12 it to you directly?

13          THE COURT:  Well, can you read it?  How long is it?

14          PROBATION OFFICER:  I can read it.  It's, like, four

15 conditions.  If you just give me a minute, I'll pull that up.

16          MR. CAREY:  I don't want to interrupt.  Your Honor did

17 ask specific questions about my client's housing situation.  Are

18 those still -- in some ways, it might be something I agree with

19 the prosecutor.  He's seeking to return to 524 Franklin Street.

20 Mr. McCauley is incarcerated.  You know, so there would be no

21 contact.  Mr. Smelko would be there alone.  I think that

22 actually would aid in appropriate supervision and monitoring of

23 his activities.  It won't be blended with anybody else.

24          THE COURT:  Thank you for that addition.  Officer

25 Neal, whenever you have those up and you're ready.

1          PROBATION OFFICER:  Yes, Your Honor.  These are

2    standard computer restriction conditions.  I did also email them

3    to you and Mr. Banas.

4          "The defendant is permitted to possess and/or use a

5    computer and is allowed to access the Internet.  However, the

6    defendant is not permitted to use a computer, or other

7    electronic communication or data storage devices, including a

8    cell phone, to access child pornography or to communicate with

9    any individual or group for the purpose of promoting sexual

10   relations with children.  The defendant shall consent to the

11   installation of any hardware/software to monitor any computer,

12   or other electronic communication or data storage devices used

13   by the defendant, to confirm the defendant's compliance with

14   this condition.  The defendant shall pay the monitoring costs as

15   directed by the probation/pretrial services officer.

16   Furthermore, the defendant shall consent to periodic unannounced

17   examinations by the probation/pretrial services officer of any

18   computers, cell phones, or other electronic communication or

19   data storage devices that the defendant has access to, to

20   confirm defendant's compliance with this condition.

21   Additionally, the defendant shall consent to the seizure and

22   removal of hardware and data storage media for further analysis

23   by or the probation/pretrial services officer, based upon

24   reasonable suspicion of a violation of the conditions imposed in

25   this case, or based upon reasonable suspicion of unlawful

1   conduct by the defendant.  The defendant's failure to submit to

2   the monitoring and/or search of computers and/or other

3   electronic communication or data storage devices used by

4   defendant may be grounds for revocation."

5           Two additional conditions, much shorter.  Number two.

6   "If the defendant's employment requires the use of a computer,

7   the defendant may use a computer in connection with the

8   employment approved by the probation/ pretrial services officer,

9   provided defendant notifies his or her employer of the nature of

10  his or her conviction (charge).  The probation/pretrial services

11  officer shall confirm defendant's compliance with this

12  notification requirement."

13          And finally, "Defendant shall provide the U.S.

14  probation office with accurate information about his/her entire

15  computer system (hardware/software) and other electronic

16  communication or data storage devices or media to include all

17  passwords used and the name of the Internet service providers.

18  The defendant also shall abide by the provisions of the Computer

19  Restrictions and Monitoring Program approved by the Court."

20          THE COURT:  Thank you, Officer Neal.

21          All right.  This matter comes before the Court on the

22  request of the government to detain the defendant, James Smelko,

23  pending trial.

24          In considering that request, I am guided by several

25  general principles:

1          First, at all times, the defendant is entitled to the

2     presumption of innocence.  Nothing that takes place during this

3     hearing or that is set forth in my finding is intended or should

4     be construed to affect that presumption.  The purpose of this

5     hearing is to determine whether, notwithstanding that

6     presumption of innocence, the defendant should be detained

7     pending trial.

8          Second, under the Bail Reform Act, pretrial detention

9     is an exceptional step.  And under the Act, a defendant must be

10    released prior to trial unless a judicial officer finds that no

11    conditions or combination of conditions exist which will

12    reasonably assure the appearance of the defendant or reasonably

13    assure the safety of any other person in the community.

14         I just want to note that I thought in Government's

15    argument, there was some reference to flight risk.  But the

16    detention request is based only on community danger and not risk

17    of flight.  In the event the government intended to amend that,

18    I did not hear any evidence presented that Mr. Smelko is a risk

19    of flight and do find that he is not.

20         So in this case, the government does have grounds to

21    detain Mr. Smelko based upon the crime that he has been charged

22    with.  And in order to determine whether or not the government

23    has met its burden to show that the defendant should be detained

24    and that there are no conditions that can be imposed that would

25    reasonably assure the safety of the community, I must look to

1    the four specific factors set forth in the Bail Reform Act.

2              First is the nature and circumstances of the alleged

3    offense.  This is a very unique situation, at least to me.

4    Mr. Smelko is charged with possession of child pornography, not

5    distribution of child pornography.  And it's not images that he

6    took, not pictures that he personally took of children.  And

7    it's also not images of child pornography as we know them.  But

8    these are morphed materials which, as described by the

9    government, are photos that are cut and pasted or somehow

10   altered using pictures of children, including child celebrities,

11   to make it appear that they are engaged in sexual acts.

12             It is considered by Congress to be a crime of

13   violence.  And I don't want to minimize the danger to the

14   community, but I do think that the particular circumstances in

15   the charge here are something that need to be taken into

16   account.

17             The second factor is weight of the evidence against

18   the defendant.  I think I heard that Mr. Smelko admitted that

19   the computer on which the alleged pornography was found belonged

20   to him.  I'm not entirely clear on that, and obviously this is a

21   detention hearing.  He did live with another person who was just

22   sentenced in April of this year, I believe, to charges involving

23   child pornography.  That, combined with the whole issue on the

24   morphed child pornography material, which I understand there is

25   some disagreement in some circuit courts, I think it's the

1   Fifth, whether or not this is totally pornography, I don't think

2   there's anything out there from the Third Circuit, but I would

3   say the weight of the evidence is low to moderate.

4          The third factor is the history and characteristics of

5   the defendant.  That includes family ties, employment, length of

6   residence, past conduct, criminal record, et cetera.  So

7   Mr. Smelko has a checkered past, to say the least.  He has been

8   convicted and served time for various things that were detailed

9   by Attorney Risacher; however, all of these things occurred, the

10  last thing was in the year 2000.  So I agree that they are all

11  very troubling, but Mr. Smelko did serve his time for those

12  charges and has had nothing, that we are aware of, for the last

13  22 years.

14         He does not have ties to the community other than the

15  fact that he has been living here, I think, for six years.

16         He does have a place to live.  I note that

17  Mr. McCauley, who has been convicted of child pornography, is no

18  longer in the residence.

19         He has a history of alcohol and illegal drug use.

20  However, that -- the last use of anything, alcohol,

21  cannabinoids, cocaine or prescription opiates, according to the

22  pretrial report, was 22 years ago.  So rather a long time and it

23  seems to have been ever since his conviction in 2000.

24         He does not have employment and is collecting Social

25  Security for a mental health condition.

1    I have no record of failure to appear at any prior

2    court proceedings, and the defendant was certainly not on any

3    type of release at the time of this alleged offense.

4    Taking all of those things into account, as well as

5    the computer restriction conditions that were read by Pretrial

6    Services Officer Neal, it seems to me that, in keeping with the

7    requirements of the Bail Reform Act, there are conditions that

8    can be imposed that would reasonably assure the safety of the

9    community.

10    These images are being created from the Internet.  The

11    condition that we generally impose, in which I will impose here,

12    requires Mr. Smelko to provide the probation office with all

13    information about his computer system.  It allows the probation

14    office to install hardware and software to monitor that

15    computer.  They can come in and do checks on the computer.  So

16    conditions can be put in place that would ensure that he no

17    longer uses the Internet to access or to create any images that

18    would be considered to be child pornography.

19    For those reasons, I find that the government's motion

20    for detention is denied.

21    And I'm going to set the following conditions of

22    release:

23    First of all, Mr. Smelko, I'm going impose a $10,000

24    unsecured bond.  That means that you do not have to post bond in

25    order to be released today.  But you are binding yourself in

1    that amount should you fail to appear for any future court

2    proceedings.

3              You also must agree that you will not violate any

4    federal, state, or local laws while you are on release.

5              You will be supervised by Pretrial Services.

6              You are to surrender any passport you may have and not

7    obtain another passport.

8              Your travel is restricted to the Western District of

9    Pennsylvania.

10             You are to avoid all contact with anyone who is a

11   victim or a witness in this investigation.

12             You are not to possess a firearm.

13             You're not to use alcohol excessively.

14             You are not to use or possess any narcotic drugs.

15             Report to pretrial any contacts you may have with law

16   enforcement.

17             And then abide by all of the computer restrictions and

18   conditions that were read aloud in court by Mr. Neal.

19             Mr. Banas, can you unmute Mr. Smelko, please.

20             THE COURT:  Mr. Smelko, are you willing to abide by

21   all of the conditions that I just read to you?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Mr. Banas, will you administer the oath,

24   please.

25        (Oath administered.)

1          THE COURT:  Mr. Smelko, may I sign the appearance bond

2     and the release documents on your behalf?

3          THE DEFENDANT:  Yes, please.

4          THE COURT:  Mr. Carey, may I sign for you as well?

5          MR. CAREY:  Yes.  Thank you, Judge.

6          THE COURT:  All right.  Anything else in this matter?

7          MR. CAREY:  No, Judge.

8          Then we are adjourned.  Thank you, everyone.

9          (Proceedings concluded at 2:28 p.m.)

10                         - - -

```
1                         I N D E X

2


3   WITNESS                                          PAGE

4   LAUREN SCOTT

5        Cross-Examination by Mr. Carey               5

6        Redirect Examination by Mr. Risacher        10

7


8


9


10


11


12


13


14                    C E R T I F I C A T E

15


16          I, SHARON SIATKOWSKI, RMR, CRR, CBC, CRI, certify that
    the foregoing is a correct transcript from the record of proceedings
17  in the above-entitled matter.

18  s/Sharon Siatkowski
    SHARON SIATKOWSKI, RMR, CRR, CBC, CRI
19  Official Court Reporter

20


21


22


23


24


25
```